UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Daniel Leroy Patten,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Jessica Schultz,<br><br>　　　　Defendant. | Case No. 19-CV-1210 (SRN/ECW)<br><br><br>**ORDER** |

SUSAN RICHARD NELSON, United States District Judge

Plaintiff Daniel Leroy Patten, a client of the Minnesota Sex Offender Treatment Program ("MSOP") in Moose Lake, Minnesota, filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983 on May 6, 2019. [Doc. No. 1]. Patten also filed an application to proceed *in formal pauperis* ("IFP"), *see* [Doc. No. 2], and an amended complaint on May 22, 2019, *see* [Doc. No. 6]. This matter was stayed, however, during the pendency of *Karsjens v. Piper*, Civil No. 11-3659 (DWF/TNL). That stay has now been lifted[1] and Patten has filed a Notice of Intent to Prosecute this matter. [Doc. No. 11]. Thus, the following are now before the Court for review pursuant to 28 U.S.C. § 1915(e)(2)(B): (1) the civil complaint, [Doc. No. 1]; (2) IFP application, [Doc. No. 2];

---

[1] Because the stay has been lifted, defendant Jessica Schultz's motion to lift the stay in this proceeding (Doc. No. 13) will be denied as moot.

1

and (3) Amended Complaint, [Doc. No. 6].  For the following reasons, this matter will be dismissed without prejudice as a result of that review.[2]

I.  INTRODUCTION

In 2017—towards the end of Patten's prison term for his 1991 convictions for first-degree attempted murder, first-degree assault, two counts of second-degree assault, three counts of kidnapping, four counts of first-degree criminal sexual conduct, and one count of first-degree burglary—Aitkin County, Minnesota filed a petition to have Patten civilly committed to MSOP as a sexually dangerous person ("SDP") and as a person with a sexual psychopathic personality ("SPP").  *See In re Matter of the Civil Commitment of Patten*, A18-1464, 2019 WL 418623, at * 1 (Minn. Ct. App. Feb. 4, 2019), *review denied* (Minn. April 16, 2019).  That petition was signed by Jessica Schultz, Aitkin County Health and Human Services (ACHHS) Supervisor. Doc. No. 6-1 at 8.  The state district court granted the petition, and Patten was civilly committed to MSOP as SDP and SPP in 2018.  *Patten*, 2019 WL 418623, at * 2.

Patten's Amended Complaint, *see* Doc. No. 6, is the operative pleading pursuant to Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure.[3]  In the Amended Complaint,

---

[2] Schultz's motion to dismiss [Doc. No. 18], filed improperly during the pendency of the stay, will be denied as moot in light of the Court's dismissal of this action pursuant to § 1915(e)(2)(B).

[3] The Court considers the amended complaint as a standalone document, without reference to the original complaint. *See In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) ("It is well-established that an amended complaint supercedes [sic] an original complaint and renders the original complaint without legal effect.").

Patten identifies Schultz, the ACHHS supervisor who petitioned for his indefinite civil commitment, as the sole defendant. *Id.* at 1. Patten generally alleges that the State of Minnesota, including former Governor Mark Dayton and former Commissioner of the Minnesota Department of Human Services Lucinda Jesson, executed a strategy, which he refers to as the "state's tactic," to indefinitely detain him beyond the expiration of his original prison sentence in violation of his constitutional rights and that Schultz, in her official and individual capacity, participated in the implementation of that strategy. *Id.* at 2-3.

Patten's claims against Schultz include purported deficiencies in his initial indefinite commitment hearing. *Id.* at 3. Specifically, Patten alleges that Schultz:

(1) Interfered with him obtaining an independent evaluation of his mental health at the time of his commitment hearing;

(2) Disregarded evaluations from the Minnesota Department of Corrections (DOC) reporting that he had "no recent or current" mental health issues;

(3) Hired Dr. Andrea Lovett, Ph.D., LP to evaluate him when she engaged in purportedly unethical practices by doubling his psychopathy score—a score he alleges should never change—and by diagnosing him with "sexual sadism disorder" without interviewing him and despite the fact that the DSM-V contains a cautionary paragraph concerning this diagnosis;

(4) Claimed that he required hospitalization and identified MSOP as a proper placement, knowing that MSOP was neither hospital, nor a mental health institution and thus would not offer him any hospital services;

(5) Received information from her own expert that Plaintiff was "remitting" as to his diagnosis but did not withdraw her petition; and

    (6)    Received compensation in the form of a paycheck for alleging participating in the state's scheme to indefinitely extend his detention beyond his prison release date.

*Id.* at 4-5.

Patten also makes several other claims against Schultz—as someone purportedly operating under the auspices of DHS—concerning MSOP:

    (1)    The state's strategy of indefinitely extending a person's confinement beyond his prison release date—as codified in the Minnesota Commitment and Treatment Act: Sexually Dangerous Persons and Sexual Psychopathic Personalities ("the Act"), *see* Minn. Stat. § 253D.01 et seq.—is unconstitutional on its face because, for example, it does not allow for periodic, independent assessments to determine whether the committed person still qualifies for commitment;

    (2)    The Act is unconstitutional as applied to him;

    (3)    He is being denied constitutionally adequate treatment because he only spends approximately 6-7 hours per week in psych-educational programming, his treatment plan is not detailed or individualized, staff are not qualified to treat sex offenders, and staffing levels are too low to meet the needs of the MSOP clients;

    (4)    He is being denied adequate treatment in violation of the Act;

    (5)    He is being punished in violation of the Fourteenth Amendment to the United States Constitution, as evidenced by his living conditions, including being housed in a cell with a double bunk, and the lack of an appropriate grievance procedure;

    (6)    He is being denied the right to be housed in the least restrictive setting in violation of the United States Constitution and Minnesota Constitution;

    (7)    He is being subjected to inhuman treatment through the "punitive and unnecessarily restrictive living conditions of MSOP" in violation of the United States Constitution and Minnesota Constitution;

    (8)    He is being denied his constitutional right to practice his religion because there is no church or any clergy at MSOP, MSOP denies his

        requests to attend church, and MSOP threatens and punishes him for refusing to attend psycho-educational assemblies where people disparage Christians and the Bible;

(9)   MSOP places unreasonable restrictions on his access to the news media and print media in violation of his right to freedom of speech and freedom of association under the First Amendment to the United States Constitution and the Minnesota Constitution;

(10)   The MSOP policies of conducting random cell searches, random pat-down searches, and strip searching him when he leaves MSOP's secure perimeter violate his right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution;

(11)   Defendant is in violation of the civil commitment order requiring him to receive sex offender treatment because he is not receiving adequate treatment;

(12)   Defendant's failure to offer him adequate sex offender treatment as contracted for in the "Consent for Participation in Sex Offender Treatment" form constitutes a breach of contract;

(13)   When she petitioned for Patten's civil commitment, Defendant was aware that Minn. Stat. § 253B.03 subd. 7 requires MSOP to provide adequate treatment to committed persons, that Plaintiff would be expected to sign the "Consent for Participation in Sex Offender Treatment" form when he entered MSOP, and that he would be expected to progress in treatment in order for MSOP to support his discharge; however, Defendant was also aware that MSOP does not offer adequate treatment and she failed to take action to change MSOP policies, which constitutes tortious interference with contract and a violation of Minn. Stat. § 253B.03 subd. 7;

(14)   Defendant employed objectively unreasonable force in the form of armed guards, razor wire fences, and threats from DOC officials and others to achieve her goal of confining him indefinitely to MSOP, knowing that the allegedly punitive conditions at MSOP were becoming more punitive, in violation of the Fourteenth Amendment; and

(15)   Defendant employed objectively unreasonable force in the form of armed guards, razor wire fences, and threats from DOC officials and others to implement the state's policy of indefinitely extending his confinement beyond his prison release date.

*See id*. at 11-47.

Throughout the Amended Complaint, Patten seeks to draw a direct line between DHS and MSOP and Schultz, alleging, for example, that "[Schultz] works under the authority of the successor to [DHS] Commissioner Jesson's," Doc. No. 6 at 13, that she "was aware of the policies and practices that would be and were implemented at MSOP," *id.* at 26, that Schultz and MSOP were managed by the "same state agency," *id.* at 27, and that MSOP acted as a "proxy" for Schultz, *id.* Patten names Schultz as a defendant in both her official and personal capacities. He requests declaratory and injunctive relief, in addition to money damages. *See* Doc. No. 6 at 47-48.

## II.   LEGAL STANDARD

An IFP application will be denied, and an action will be dismissed, when an IFP applicant has filed a complaint that fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam). In reviewing whether a complaint (or portion thereof) states a claim for which relief may be granted, this Court must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Varga v. U.S. Nat'l Bank Ass'n*, 764 F.3d 833, 838 (8th Cir. 2014). The factual allegations need not be detailed, but they must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id*. at 570. Pro se complaints are to be construed liberally, but they

must still allege enough facts to support the claims advanced. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citing cases).

### III.  ANALYSIS

Patten raises two categories of claims under § 1983 against Schultz.  First, Patten alleges that Schultz is responsible for the fact of his civil commitment—a civil commitment that Schultz regards as unlawful.  Second, Patten alleges that Schultz is, at bottom, responsible for the *specific conditions* of his confinement at MSOP, which Schultz believes to be unlawful regardless of whether the commitment itself is unlawful.  The first category of claims is barred by the favorable termination rule articulated in *Heck v. Humphrey*, 512 U.S. 477, 512 (1994), while the second category of claims has been insufficiently pleaded with respect to Schultz in either her individual or her official capacities.

### A.  *Heck*-bar

In *Heck*, the Supreme Court concluded that a state prisoner's claims are not cognizable under § 1983 when the resolution of such a claim would necessarily call into question the validity of the outstanding criminal conviction or sentence. 512 U.S. at 486-87.  Courts have extended this principle—known as the *Heck* favorable-termination rule—to circumstances such as this where the plaintiff is in custody pursuant to a civil commitment order, rather than a prison sentence.  *See Wei Shi v. Knight*, Civil No. 12-2411 (PJS/JJK), 2012 WL 6652925, at *1 (D. Minn. Nov. 2, 2012) ("[T]he rule . . . reiterated in *Heck*, is fully applicable to state detainees who are confined by reason of a civil commitment order . . . .") (citing *Carter v. Bickhaus*, 142 F. App'x 937, 938 (8th Cir. 2005)); *Thomas v. Eschen*, 928 F.3d 709, 713 (8th Cir. 2019).

7

In this case, a favorable outcome on the claims concerning Patten's initial commitment proceedings would necessarily call into question the validity of those proceedings. Allegations, for example, that Schultz interfered with Patten obtaining an independent mental health evaluation in advance of the hearing or that the Defendant's own expert witness developed a different opinion regarding Patten's diagnosis in the middle of the proceedings, raise questions about the adequacy of the process that resulted in Patten's indefinite civil commitment. Until that commitment has been invalidated through another procedural mechanism, Patten cannot bring claims premised on the invalidity of that detention. All such claims will therefore be dismissed without prejudice pursuant to the *Heck* favorable-termination rule. *Gautreaux v. Sanders*, 395 F. App'x 311, 312-13 (8th Cir. 2010) (per curiam) (modifying judgment of dismissal under *Heck* to be without prejudice so that plaintiff can refile if he later satisfies *Heck* favorable-termination requirement).

### B. Conditions of Confinement Claims

Not all of Patten's claims amount to an attack on the validity of his detention. As explained above, Patten alleges that his constitutional rights have been violated in several respects during his confinement at MSOP. To cite just one example, Patten alleges that his First Amendment right to practice his religion has been curtailed during his civil commitment. Nothing about this claim necessarily implies that Patten's civil commitment is *itself* unlawful, and therefore *Heck* does not require dismissal of that claim.

Nevertheless, Patten's claims regarding the conditions of his confinement fail for a more basic reason: Patten does not adequately allege that Schultz is responsible for those

conditions. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citations omitted). Patten alleges that he has been subject to a number of constitutional violations as a client at MSOP, but he fails to allege any facts suggesting that Schultz—the only named defendant in this matter—was personally involved in or responsible for these alleged violations. Nowhere does the complaint plausibly allege that Schultz, an employee of ACHHS, has any role in operating or maintaining MSOP, a facility operated by the State of Minnesota. Schultz's only relationship to Patten, according to the complaint, is that she initiated the process that ended with Patten's commitment. But as explained above, Patten cannot challenge the fact of that commitment in this litigation; he may challenge only the conditions of that commitment. But even taking every plausible allegation in the complaint as true, Schultz cannot be said to be personally responsible for any of those conditions. Thus, Patten's conditions-of-confinement claims against Schultz under § 1983 fail as a matter of law. *See Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999) (affirming dismissal of § 1983 action where plaintiff "failed to allege facts supporting any individual defendant's personal involvement in or responsibility for the [constitutional] violations").

Recognizing that courts must give pro se complaints the benefit of a liberal construction, however, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court also considers whether Patten addressed sufficient facts to establish that Schultz conspired with DHS to allegedly violate his constitutional rights by petitioning for his indefinite civil commitment and finds that he did not.

To prove a 42 U.S.C. § 1983 conspiracy claim, the plaintiff must show: "(1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citing *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999)). Further, to prevail, the plaintiff must demonstrate a "deprivation of a constitutional right or privilege." *Id.*

Patten does not get passed the first factor—that the defendant conspired with others to deprive him of constitutional rights—because the complaint fails to establish a conspiracy. A conspiracy claim "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." *Faulk v. City of St. Louis, Missouri*, 30 F.4th 739, 748 (8th Cir. 2022) (quoting *Twombly*, 550 U.S. at 556). Patten alleges that Schultz was aware of and participated in DHS's scheme to transform determinate prison sentences into indefinite civil commitments—what he refers to as "the state's tactic"—in violation of his constitutional rights. *See, e.g.*, Doc. No. 6 at 2-3. Aside from such blanket assertions and general claims that MSOP served as Schultz's "proxy," *id.* at 27, Patten fails to plead any facts, which, if taken as true, would suggest that Schultz was working in concert with DHS to deprive him of his constitutional rights. *Id.* Further, allegations of a such a conspiracy simply ignore the unequivocal fact that the state court—not Schultz or DHS— issues the order for indefinite civil commitment. *See* Minn. Stat. § 253D.07 subd. 3. Accordingly, even when liberally construed, Patten's complaint fails allege sufficient facts to establish a conspiracy. Thus, any claim that Schultz conspired with DHS to deprive him of his constitutional rights fails as a matter of law.

In short: *Heck* bars Patten from challenging the fact of his civil commitment in an action brought under § 1983, and Patten has not plausibly alleged that the lone defendant named to this action is responsible for the allegedly unlawful conditions of his confinement. This matter will therefore be dismissed without prejudice in its entirety.

## IV.   CONCLUSION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. This matter is **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B).

2. Plaintiff Daniel Leroy Patten's application to proceed *in forma pauperis* [Doc. No. 2] is **DENIED**.

3. Defendant Jessica Schultz's motion to lift the stay [Doc. No. 13] is **DENIED AS MOOT**.

4. Schultz's motion to dismiss [Doc. No. 18] **is DENIED AS MOOT**.

   **LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: October 3, 2022                                  s/Susan Richard Nelson
                                                        SUSAN RICHARD NELSON
                                                        United States District Judge

11